IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JERI JAE ROBERTS, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:15-CV-00569-CAN |
| | § | |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits and supplemental security income [Dkt. 1]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **REMANDED**.

**BACKGROUND**

**I.** *Procedural History Of The Case*

Jeri Jae Roberts ("Plaintiff") filed her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") on June 25, 2012, and her application for supplemental security income ("SSI") under Title XVI of the Act on August 2, 2012, alleging an onset of disability date of May 7, 2012 in each application. Plaintiff's applications were initially denied by notice on October 5, 2012, and again upon reconsideration on January 14, 2013, after which Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 138-43, 150-62. The ALJ conducted a hearing on November 4, 2013 ("Hearing"), and heard testimony

from Plaintiff and Vocational Expert LaKedra Parker ("Ms. Parker" or "VE"). *Id.* at 28-76. Plaintiff was represented by counsel at Hearing. *Id.* On January 28, 2014, the ALJ issued his decision denying benefits, and found Plaintiff not disabled at Step Five of the prescribed sequential evaluation process (discussed *infra*). *Id.* at 10-27. Plaintiff requested that the Appeals Council review the ALJ's decision, and on June 26, 2015, the Appeals Council denied Plaintiff request for review, making the decision of the ALJ the final decision of the Commissioner. *Id.* at 1-9.

On August 21, 2015, Plaintiff filed her Complaint with this Court [Dkt. 1]. On December 21, 2015, the Administrative Record was received from the Social Security Administration ("SSA") [Dkt. 12]. On December 22, 2015, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 13]. Plaintiff filed her Brief on March 4, 2016 [Dkt. 20]. On May 3, 2016, the Commissioner filed her Brief in Support of the Commissioner's Decision [Dkt. 21]. Plaintiff filed her Reply brief on May 13, 2016 [Dkt. 22].

## II. *Statement Of Relevant Facts*

### 1. *Age, Education, and Work Experience*

Plaintiff was born on August 27, 1967, making her forty-four years old at the alleged disability onset date (and classified as a "younger person") [TR at 23, 191, 193]. *See* 20 C.F.R. § 416.963(c). Plaintiff asserts that her onset date of disability is May 7, 2012 [TR at 191, 193]. Plaintiff has at least a high school education. *Id.* at 23, 32-33. Plaintiff has past relevant work experience as a cashier, clerical worker, guest services, photographer in an amusement park, food service supervisor, post master, teller, stocker, and an amusement park decorator. *Id.* at 69.

2.  *Medical Record Evidence*

a.  *Physical Health Treatment*

Plaintiff was treated at Lake Cities Medical Center from 2010 through 2012 for conditions including hypertension, obesity, hypothyroidism, headache and myalgias [TR at 382-486]. Plaintiff underwent polysomnogram testing in 2010 that revealed moderate to severe sleep apnea. *Id.* Records from Presbyterian Hospital shows that Plaintiff presented twice in 2011 with complaints of headache and chest pain. *Id.* at 291-381. In September 2011, an MRI of the cervical spine showed a small herniated disc with mild cord impression, and Plaintiff was diagnosed with headache, precordial chest pain, history of thyroid cancer and uncontrolled hypertension. *Id.* at 291-336.

Plaintiff was referred to Paramount Cardiovascular Associates in February 2011 to evaluate her complaints of sharp chest pain and dizziness. *Id.* at 382-591. Dr. Stephen Glaser noted a history of cerebrovascular accident in 2005. The record also contains notes from Rheumatology Associates and Dr. Zoran Kurepa dated from 2012 showing diagnoses of fibromyalgia, hypertension, hypothyroidism, obesity, and depressive disorder. *Id.* at 592-618. Plaintiff reported symptoms of severe body pain, morning stiffness, fatigue, insomnia, decreased memory, and feeling itch, and her physician noted the presence of 18/18 positive tender points. *Id.* In 2012 and 2013, Dr. Tya-Mae Julien treated Plaintiff, and Dr. Julien diagnosed Plaintiff with hypertension, diabetes, coronary artery disease, morbid obesity, fibromyalgia, hypothyroidism, depression, anxiety, chronic fatigue, irritable bowel syndrome, and multiple joint pains. *Id.* at 671-94, 707-35. Additionally, Plaintiff was treated at Primary Care Clinic of North Texas for conditions including fibromyalgia, hypertension, headaches, sleep apnea, restless leg syndrome and depression. *Id.* at 753-57.

### b. *Mental Health Treatment*

Plaintiff underwent three individual counseling sessions in 2012 and 2013 for depression and posttraumatic stress related to prior sexual assault. *Id.* at 701-06, 747-52. Denton County MHMR treated Plaintiff in October 2013 for major depressive disorder, anxiety disorder NOS, posttraumatic stress disorder and panic disorder. *Id.* at 736-46. Plaintiff was assigned an initial Global Assessment of Functioning score of 45. *Id.* On September 6, 2012, Dr. Kim Johnson performed a psychological consultative examination of Plaintiff. *Id.* at 619-24. Dr. Johnson diagnosed Plaintiff with major depressive disorder, severe with psychotic features, panic disorder with agoraphobia and generalized anxiety disorder. *Id.*

### c. *State Agency – Drs. Ward, Rowley, Lankford, and Ghai*

On October 3, 2012, Dr. Tina Ward completed a state agency assessment of Plaintiff, noting a diagnosis of fibromyalgia, secondary diagnosis of hypertension, and other diagnosis of hypothyroidism. *Id.* at 625-32. Dr. Ward assigned a functional ability to perform light exertional activities: carrying/lifting twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. *Id.* Dr. Patty Rowley affirmed this opinion on January 10, 2013. *Id.* at 668.

Dr. Charles Lankford created a report called a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment on October 4, 2012. *Id.* at 633-50. Dr. Lankford determined Plaintiff had severe impairments related to major depressive disorder and panic disorder. *Id.* Dr. Lankford determined that Plaintiff had mild limitations for activities of daily living, mild limitations regarding social functioning, and moderate limitations regarding concentration, pace and persistence. *Id.* Dr. Lankford opined that Plaintiff had the capacity to

understand, carry out and remember only simple tasks and instructions. *Id.* Dr. Veena Ghai affirmed this opinion on January 10, 2013. *Id.* at 669-70.

### d. *New Medical Evidence Before Appeals Council*

For the Appeals Council's review of the ALJ's decision, Plaintiff proffered new medical evidence, including (1) treatment notes and an assessment from Dr. Meena Patel; (2) a medical assessment from Dr. John Joseph; and (3) a treatment note from Dr. Diane Anderson. *Id.* at 2. Dr. Patel's assessment dated June 24, 2014 indicates a "current diagnosis" of panic disorder and agoraphobia. *Id.* at 109. Dr. Joseph's medical assessment, a Fibromyalgia Questionnaire dated May 9, 2014, stated a diagnosis of the following impairments: "PTSD, chronic fatigue, IBS, hyperlipidemia, hypertension, depression." *Id.* at 119-25. Dr. Anderson's treatment note dated August 18, 2014 diagnoses Plaintiff with fibromyalgia, hypothyroidism, chronic urticarial, idiopathic, benign hypertension, depression with anxiety, gastroesophageal reflux disease, chronic fatigue, irritable bowel syndrome, chronic multiple joint pain, rheumatoid arthritis, morbid obesity, left knee pain or problems and left foot pain. *Id.* at 111-18.

### 3. *Hearing Testimony*

#### a. *Plaintiff's Testimony*

At Hearing, Plaintiff testified about her functional limitations. Plaintiff testified that she now has problems remembering the "simplest things," and a doctor told her this is a symptom of her fibromyalgia—called a fibro fog [TR at 45-46]. Plaintiff also testified that she suffers from migraine headaches lasting from eight to twelve hours, and she will sit in a room with thick curtains that block out light. *Id.* at 49. Plaintiff can stand for forty minutes when taking pain medication and can stand for only five minutes without pain medication. *Id.* at 51. Plaintiff experiences "stabbing pains" in her torso, upper arms, neck, and upper thighs. *Id.* at 56. The stabbing pain

prevents Plaintiff from falling asleep; she testified that she only gets two to three hours of sleep a night. *Id.* at 59-60. She stated that her hands are too weak to hold onto things and has trouble gripping bowls, glasses, and even silverware. *Id.* at 57. The psychological evaluation that the SSA arranged brought some of Plaintiff's past traumas to her attention. *Id.* at 60. These traumas have resulted in intrusive thoughts occurring every other day. *Id.* at 61. Such episodes include Plaintiff fearing that she saw someone who had attacked her many years ago while she was out shopping with her family. *Id.* at 61-62.

### b. *Vocational Expert Testimony*

Ms. Parker testified as a vocational expert at the Hearing [TR at 69-74]. The ALJ asked the VE to describe Plaintiff's work history, and the VE responded that Plaintiff has past work as a cashier (DOT 211.462-010, light, unskilled, SVP 2), clerical worker (DOT 219.362-010, light, semi-skilled, SVP 4), guest services (DOT 187.117-038, sedentary, skilled, SVP 7), photographer in an amusement park (DOT 143.457-038, light, semi-skilled, SVP 3), food service supervisor (DOT 319.137-010, light, skilled, SVP 6), post master (DOT 188.167-066, sedentary, skilled, SVP 7), teller (DOT 311.362-018, light, semi-skilled, SVP 5), stocker (DOT 922.687-058, medium, unskilled, SVP 2), and an amusement park decorator (DOT 899.687-010, very heavy, semi-skilled, SVP 4). *Id.* at 69. The VE testified that Plaintiff could not perform her past relevant work. *Id.* at 72. The ALJ then asked Ms. Parker:

> Let's assume a person of her age, education, and work experience could perform a job where she could sit or stand six out of eight hours a day. And let's say she could sit for and stand for as long as she has the opportunity to sit or stand at her will. And let's say she can lift 20 pounds occasionally and 10 pounds frequently. Would she be able to perform any type of work?

*Id.* at 73. The VE testified that there are other jobs that exist in the national economy that such a hypothetical individual could perform including: price tagger, storage facility rental clerk, and a photocopy machine operator. *Id.* at 73-74. In response to a hypothetical posed by the ALJ,

Ms. Parker testified that an additional limitation of fog (i.e. clouding Plaintiff's ability to think straight on the task) occurring at least two hours a day would eliminate competitive employment. *Id.* at 74. Lastly, the ALJ posed another hypothetical limitation that Plaintiff would miss at least one day a week from work, and the VE testified that this limitation would also eliminate competitive employment. *Id.*

## III. *Findings Of The ALJ*

### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

## 2.  *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 7, 2012, the alleged disability onset date [TR at 16].  At Step Two, the ALJ determined that Plaintiff had the severe impairments of "fibromyalgia, hypertension, hypothyroidism, obesity, major depressive disorder, anxiety disorder, posttraumatic stress disorder and panic disorder." *Id.*  At Step Three, the ALJ found that these impairments, singly or in combination, did not satisfy the requirements for a presumptive finding of disability under the Act.  *Id.*  At Step Four, the ALJ found Plaintiff had the RFC to perform "sedentary work."[1]  *Id.* at 18.  Specifically, the ALJ found:

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that she can lift and/or carry 10 pounds occasionally, lift and/or carry less than 10 pounds frequently, stand/walk for two hours in an 8-hour workday.  The claimant has the ability to understand, carryout and remember simple tasks and instructions.

*Id.*  Continuing the Step Four analysis, the ALJ then determined that Plaintiff was unable to perform any of her past relevant work. *Id.* at 23.  At Step Five, based on Plaintiff's age, education, work experience, RFC, and the Medical-Vocational Rule 201.28, the ALJ found Plaintiff was not disabled.  *Id.* at 23.  Specifically at Step Five, the ALJ determined a finding of "not disabled" was

---

[1] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy.  20 C.F.R. § 404.1567.  Sedentary work is defined as follows:

> (a) Sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

directed by Medical-Vocational Rule 201.28.  *Id.*  Thus, the ALJ concluded Plaintiff was not disabled from May 7, 2012 to January 28, 2014.  *Id.* at 24.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995).  Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court.  *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393.  "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above.  20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff raises two issues on appeal: (1) whether the ALJ's Step Five finding is supported by substantial evidence; and (2) whether the Appeals Council failed to properly consider new and material evidence.  The Court finds Plaintiff's first issue requires remand in this case, as discussed below.

## 1. ALJ's Step Five Finding Not Supported by Substantial Evidence

Plaintiff contests the ALJ's finding at Step Five, arguing that the ALJ erred by basing his finding solely on Medical Vocational Guidelines (Grid Rules) [Dkt. 20 at 3]. The Commissioner concedes in her Brief that the Fifth Circuit—in unpublished decisions—has previously held that a finding of a severe mental (non-exertional) impairment at Step Two automatically precludes the ALJ from relying solely on the Grid Rules at Step Five; however, the Commissioner argues that notwithstanding such authority, Plaintiff's non-exertional mental limitations in the instant case had little or no effect on her ability to perform sedentary, unskilled work [Dkt. 21 at 4-5].

At Step Five, the burden is on the Commissioner to show that Plaintiff was capable of gainful employment despite her impairments. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (citing *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999)); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). An ALJ often relies on the Grid Rules to assess whether work exists in the economy that a claimant, given his or her RFC, can perform. An ALJ may rely exclusively on the Grid Rules when the claimant "suffers only from exertional impairments," or when "the claimant's non-exertional impairments do not significantly affect his residual functional capacity." *Crowley*, 197 F.3d at 199; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). However, when a claimant suffers from non-exertional impairments (such as mental impairments) that have a significant effect on the RFC, an ALJ must rely on "expert vocational testimony or other similar evidence" to meet the Commissioner's Step Five burden: "This Circuit has consistently held that once the ALJ determines that a claimant suffers from a non-exertional impairment that prevents her from performing her past work and the full range of other available work, the Secretary must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)

(internal quotation marks and citations omitted); *see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Fifth Circuit also has held consistently that a Step Two finding that a non-exertional mental impairment is "severe" precludes an ALJ from relying solely upon the Grid Rules when making the Step Five determination. *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000) ("We have determined that the ALJ's finding that Mr. Loza's mental impairment was non-severe was [error]. Accordingly, if it should be determined on remand that Mr. Loza's non-exertional mental impairments during the period of disability were not merely a slight abnormality of minimal effect on ability to work, the ALJ's reliance on the Grid Rules at the fifth level also constitutes error and must be reconsidered"). *See White v. Astrue*, 239 F. App'x 71, 73-74 (5th Cir. 2007) ("An ALJ's finding of a severe non-exertional impairment at [S]tep [T]wo precludes the ALJ from relying solely on the Grid Rules at [S]tep [F]ive"); *Hearne v. Barnhart*, 111 F. App'x 256, 257-58 (5th Cir. 2004) ("In Loza, this court linked the definition of a 'severe' impairment at Step Two to the determination of whether a claimant's non-exertional impairments significantly affected his [RFC] such that reliance solely upon the Grid Rules at Step Five would be inappropriate").

Even when the claimant is so affected by a non-exertional impairment as to preclude resort to the Grids, they "may nevertheless be consulted as a 'framework' for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contradicted by the non-exertional limitations." *Moore v. Social Sec. Admin.*, 153 F. App'x 945, 947 (5th Cir. 2005) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (2005)). "If the applicable rule directs a finding that plaintiff is not disabled, [however,] the Commissioner [must] consider non-exertional limitations and utilize the testimony of a vocational expert." *Rodriguez v. Barnhart*, No. SA-05-CA-1203, 2006 WL 3779777, at *2 (W.D. Tex. Nov. 6, 2006); *see also Gonzalez v. Astrue*, No. M-09-210, 2013 WL 1345298, at *9 n.14 (S.D. Tex. Mar. 29, 2013)

(observing that courts and legal scholars have noted that "how exactly the grids provide . . . a framework is unclear . . . [but] one thing is clear: Where the claimant's characteristics do not 'coincide exactly' with a Grid rule, the ALJ should introduce expert vocational testimony to further assist him in his 'Grids framework' guided analysis.") (citing *Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir. 1985)).

In this case, the ALJ held at Step Two that Plaintiff had "severe" non-exertional impairments, namely, major depressive disorder, anxiety disorder, posttraumatic stress disorder, and panic disorder [TR at 16]. The ALJ found significant non-exertional limitations and, based on these limitations, determined at Step Four that she was unable to perform her past relevant work. Indeed, the ALJ stated that Plaintiff "is unable to perform her past relevant work as it is beyond her . . . mental capacities." *Id.* at 23.

Given these determinations, the ALJ erred when he did not rely upon expert testimony or other "similar evidence" to support his Step Five finding that Plaintiff was "not disabled." *Pedigo v. Astrue*, No. 4:09-CV-2513, 2010 WL 3808687, at *3-4 (S.D. Tex. Sept. 27, 2010). Indeed, while a VE was present at Hearing, the ALJ's Determination makes clear that he relies solely and exclusively upon the Grids to make his Step Five finding. *Id.* at 23. The ALJ concludes his Step Five finding with the following: "Based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.28. *Id.* Because he found at Step Two that Plaintiff's mental impairments were severe, the ALJ could not rely solely on the Grids and was required to make an individualized Step Five determination with the assistance of the VE's testimony or other similar evidence. *See Jones v. Colvin*, No. 3:15-CV-01933-BH, 2016 WL 5085972, at *9 (N.D. Tex. Sept. 20, 2016) ("The ALJ was required to make an individualized step

five determination with the assistance of VE testimony or other similar evidence."); *Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir. 1988) ("[T]he ALJ's mechanical application of the guidelines failed to consider the aggregate impact of [the claimant's] ailments."); *Parks v. Colvin*, No. 5:13-CV-102-C, 2014 WL 982865, at *3 n.1 (N.D. Tex. Mar. 12, 2014) ("[A]n ALJ's finding of severe non-exertional impairments at [S]tep [T]wo prevents an ALJ from relying solely on the grid rules at [S]tep [F]ive.") (citing *White v. Astrue*, 239 Fed. App'x. 71, 7374 (5th Cir. 2007); *Barnes v. Astrue*, 4:11CV–S26–Y, 2012 WL 1548923 (N.D. Tex. Mar. 5, 2012) (holding same); *Thomas v. Comm'r of Soc. Sec.*, No. CV 15-2-EWD, 2016 WL 5346952, at *4 (M.D. La. Sept. 23, 2016) ("Because the ALJ relied solely on the Grids in his [S]tep [F]ive analysis after finding the Plaintiff suffered from severe non-exertional impairments at [S]tep [T]wo, the ALJ committed legal error and remand is appropriate."); *Mosley v. Astrue*, No. 5:12-CV-049-BG, 2013 WL 840821, at *3 (N.D. Tex. Feb. 12, 2013)*, report and recommendation adopted sub nom. Mosley v. Colvin*, No. 5:12-CV-049-C ECF, 2013 WL 864779 (N.D. Tex. Mar. 7, 2013) ("The Court of Appeals for the Fifth Circuit has directed that in cases in which the claimant suffers from non-exertional impairments or a combination of exertional and non-exertional impairments, the Commissioner must rely on testimony from a vocational expert rather than the guidelines."); *Milligan v. Colvin*, No. 2:12-CV-101, 2013 WL 5345842, at *6 (N.D. Tex. Sept. 24, 2013) (finding the ALJ committed legal error when he relied exclusively on the Grids). Accordingly, the ALJ erroneously relied on the Grid Rules at Step Five, and his finding was not supported by substantial evidence and remand is appropriate.

## 2. *Appeals Council's Consideration of New and Material Evidence*

Plaintiff also argues that the Appeals Council failed to properly consider new and material evidence provided, namely treatment notes and an assessment from Dr. Patel.[2] The Parties dispute whether Dr. Patel's assessment and notes cover the period of May 7, 2012 through January 28, 2014. The assessment itself is dated June 24, 2014 [TR at 108-10]. Thus, it was created after the relevant time period. Such opinions may still be considered, but they "must refer clearly to the relevant period of disability and not simply express an opinion to the claimant's current status." *McLendon v. Barnhart,* 184 F. App'x 430, 432 (5th Cir. 2006) (per curiam) ("Records describing a claimant's current condition cannot be used to support a retrospective diagnosis of disability absent evidence of an actual disability during the time of insured status."); *see Jowers v. Colvin*, No. 1:15-CV-130-BL, 2016 WL 4131828, at *3 (N.D. Tex. Aug. 2, 2016); *Howeth v. Colvin*, No. 12-CV-0979-P, 2014 WL 696471, at *4 (N.D. Tex. Feb. 24, 2014). At best, it is unclear whether Dr. Patel's treatment notes and assessment relate to the relevant time; again, the assessment on its face states it is a "current diagnosis." While Dr. Patel treated Plaintiff prior to the ALJ decision, the assessment does not refer to the relevant period and appears to express a present opinion. *See McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir. 2006) ("Records describing a claimants current condition cannot be used to support a retrospective diagnosis of disability absent evidence of an actual disability during the time of insured status."). Accordingly, remand is not required on this ground.

---

[2] Plaintiff's Brief initially advances that the Appeals Council should have also considered the medical assessment from Dr. John Joseph and a treatment note from Dr. Diane Anderson; however, Plaintiff's Reply Brief [Dkt. 22] abandons such position and only argues Dr. Patel's records. Accordingly, the Court limits its consideration of this issue to Dr. Patel's treatment notes and assessment.

## CONCLUSION

For the foregoing reasons, the Court finds that the decision to deny disability benefits to Plaintiff is **REMANDED** to the Commissioner for further deliberation in accordance with this decision.

**SIGNED this 27th day of March, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE